We'll hear the final case on the calendar, United States v. Wilbert Bryant. Good morning, your honors. Michael Huston for the defendant appellant, Wilbert Bryant. May it please the court. We are appealing the order of decision by Judge Koontz denying Mr. Bryant's bail. We made the application proposing a bond of $500,000 secured by five shorters, home confinement, electronic monitoring, strict pre-trial supervision. And the basis was basically three folds. One, that Mr. Bryant presents with serious medical issues that the CDC recognizes that make him vulnerable to the dangers of COVID-19 exposure. And those both are set forth in my brief. Second, that we presented a package that overcame the situation in terms of the issue about dangerousness that existed at the initiating part of the case. So we have the shorters in place, we have a bond in place to overcome the presumption. And third, we talked about the need to prepare for trial as another basis for granting bond or temporary release so we can prepare for trial. We highlighted specifically the issue regarding Mr. McCoy, co-defendant of Mr. Bryant. And I do want to spend some time on that. The issue is not, we're not saying that a court must follow what happened to another co-defendant. But comparisons are something we all do in the law. Indeed, in the government's own brief, they make a comparison to the Paisley case and say, looking at that case, the factors should not apply to Bryant. How do you respond? This is Judge Castron. How do you respond to the argument that the circumstances of your client's bail, of your client's January 4th arrest are different? The court concluded that he resisted arrest, barricaded himself in his apartment, stabbed one of the arresting officers with a knife, which the court characterized as demonstrating his propensity for violence. What the district court did was it concluded that that incident, together with his violent criminal history and alleged involvement in the incident offense, shows that he would pose a serious threat to the safety of the community upon release. So the case is different in this view. Bryant's case is different from McCoy's case. Your Honor, the point that you make is addressed by the package to overcome that conduct. Granted, they are different, McCoy's situation. But the other factor that we have to look at also is the need to prepare for trial for Bryant as well. On that factor, that's not a great fact for us. I can't ignore that. The government can proceed by a proffer, and they've chosen to do that. I would point out that there's no charges stemming from that conduct. It's an allegation at this time. Obviously, the court can credit it. However, the package itself puts Mr. Bryant in a different position. If he were now to misbehave or do something that goes against the court's order, then other people would be affected. That would be in the matrix or the spectrum of his decision-making. Also, you would have the added benefit in terms of he would be under electronic monitoring. You would have him situated in the situation that he's under confined conditions. If he were to try to flee or anything like that, obviously, he would be traced and captured. These other people would forfeit money, and they'd be affected. That's how we overcome the proffer that the government has made. Mr. Huston, this is just Loehr, and it's always good to hear from you. Just to follow up on that, the package that's been proposed and that was rejected really is relevant to risk of flight, not dangerousness. Can you address that, and why is it that you're unable to prepare for trial if Mr. Bryant is incarcerated, is in jail? Your Honor, I see the package as overcoming the burden or the presumption of dangerousness. This is why we feel this, that if the allegation is that the government is saying that Mr. Bryant will not comply with conditions, he will act in this violent manner, then one of the restraining measures on him will be other people being affected. I do think that they're intertwined. It may be that the point is that someone could perceive that it's not great enough, but I think that's how it's overcome. In terms of pushing back on the allegation itself, the government's made its proffer. They haven't brought the charges against my client regarding the conduct, and so we're left with the allegation. But I don't really have much more to say on that point other than that, Judge Moyet. And going to the issue about preparation for trial, granted, the judge did put out the trial to December 1st, and actually there's a recent order now, it's December 7th. And so we do have, there is time. And I can make the representation that I've been communicating with my client, and we've been doing what we can to move through this. However, I do believe there comes a point where you need to have real discussions with your client in a face-to-face circumstance. We do have video, but it's limited. Obviously, at some point, we may have to address this issue further with the district court in terms of trying to expand time. But this is part of the impact and one of the reasons why we're asking for the bail so we can proceed in a way that protects Mr. Bryant's rights in the most robust way. So that's my response there with respect to those questions, Judge Moyet. Okay. Thank you. Judge Walker? Yes, just going back to the trial situation, I can understand that, and the preparation for trial. I can see that COVID-19 is posing a problem for lawyers meeting with their clients because of the pandemic. I'm not sure of the details of how the correction centers are coping with that. But to the extent that there's community, but it does seem to me that this is something that's peculiarly within the province of the district court as you're approaching trial. You want to find out, you have to make some major decisions. My client could testify. Is there a possibility of a plea? What is his view of the evidence? All of that. But that sort of granular detail, it seems to me, is not best addressed in deciding a bail motion like this at this time. But it's rather one that deals with how to manage a trial when a person's in custody and give him the appropriate access to his attorney so that his rights can be protected. And it seems to me that that's fundamentally a matter for just trial management. And that's what district courts do. That's one of the major functions they perform. And we're not really in a position to be able to assess that and make a ruling on that very easily. Would you agree? Your Honor, yes, I do agree as a professional in this practice. The granular aspect of day-to-day dealing of the courts, that's the district judge, the AUSAs, and the defense lawyers. However, I would add this, and this is why I think it's appropriate in this argument, in this context, that in looking at the factors, because of the conditions that the pandemic has put in place, it has created an impact on the right. And to ignore that in terms of a decision-making, in terms of talking with a judge about the release of a client, that's just simply impossible for a defense lawyer to do. So I had to have the discussion with the judge, and I have to have the discussion with the panel today. It's a factor. The weight one may want to give it, I guess, could be disputed. We think it has a significant weight. And I know my time is coming to a conclusion, but I do want to just point out in terms of the issue we brought up, McCoy, because obviously these individuals are different. And we have this one issue about the arrest, but there's so many other similarities. We have health conditions that are serious, no one's disputing. We have essentially the same criminal acts. We have issues at facilities in terms of COVID-19. We have Mr. McCoy's criminal history, frankly, is more significant than Mr. Bryant's, and the issue of the weight of evidence. So really there's no distinguishing except the government consensus, and we have the issue of the allegation about Mr. Bryant's conduct when he was arrested, which, again, he's not been charged with. So looking at that, our position is that it was error for the court not to release Mr. Bryant based on the package that we've presented. Thank you, Mr. Houston. Thank you, Judge Katzen. We'll hear now from your adversary. May it please the court, my name is Andre Spector, and I represent the government below and on this appeal. In January of 2019, when the FBI and the NYPD tried to arrest Mr. Bryant, he attacked them. He barricaded himself in the apartment, and then he tried to stab an NYPD officer. He continued to struggle throughout his arrest. At his apartment, the arrest team found knives and shell casings. Putting that conduct and those weapons aside, Mr. Bryant is also charged with, among other crimes, extortion and firearm offenses stemming from the murder of a victim, though it is co-defendant money. There is a realistic possibility that Mr. Bryant will spend the rest of his life in prison, which significantly increases his incentive to flee. And through his conduct, both the charged felony murder and the uncharged arrest conduct, Mr. Bryant has shown that he's an immense danger to the community. The district court was well justified to deny Mr. Bryant's motion for pre-trial release, and it certainly did not clearly err in doing so. Unless your honors have any questions, the government rests on its submission. Any further questions? No, thank you, Judge Katzen. Judge Walker? No further questions. I have no further questions either. We thank you both for your arguments. The court will reserve decisions.